This matter is before the court on a petition to fix compensation for the services of the solicitors for the complainant in a foreclosure suit, and to enforce a lien therefor. The suit was instituted by Thomas A. Murchio to foreclose a mortgage for the principal sum of $2,500. The late John O. Benson *Page 7 
was his solicitor. The suit was contested and came to final hearing before this court on defenses involving the regularity of the execution of the mortgage and the authority of the mortgagor to execute it. Mr. Bernstein was associated with Mr. Benson and participated in the preparation and the trial of the foreclosure suit. Mr. Benson died after the final hearing, and soon after his death Mr. Bernstein was substituted as solicitor for Mr. Murchio. Thereafter a decree was entered holding that the mortgage was valid and enforceable and directing a sale of the premises. Mr. Bernstein entered this decree and proceeded in due course to enforce it, which resulted in a sale of the premises to Mr. Murchio, the mortgagee, on his bid of $3,100. Both Mr. Benson's estate and Mr. Bernstein are now before the court as petitioners, asking that together they be allowed the sum of $775 as the value of their services, to be impressed as a lien on the premises and to be paid before delivery of the sheriff's deed to Mr. Murchio.
Counsel for Mr. Murchio contends that this court is without any jurisdiction to fix the amount of fees and that accordingly the original solicitor and his successor should be remitted to an action at law. This contention is unsound since by statute a lien is expressly given to a solicitor for his services in litigation and the court is expressly given the right to determine and enforce the lien. Laws of 1914, page 410.
There have been numerous cases under this statute in which the practice here followed has been approved. Artale v. ColumbiaInsurance Co., 109 N.J. Law 463, citing numerous cases in the court of chancery; Cicalese v. Fortunato, 92 N.J. Eq. 329. In these cases it was held that the client was not entitled to a jury trial, but the court could fix the amount of compensation.
At the hearing held before the court, the testimony was very conflicting. Mr. Murchio contends that his arrangement with Mr. Benson was to pay him $100 and taxed costs, if the foreclosure suit should not be contested; and an additional $150 in case there should be a contest. There was in fact a contest, and taxed costs in the foreclosure suit amounted to $398.78. This would make the amount payable by Mr. Murchio $648.78. He testified that he paid Mr. Benson $100 *Page 8 
in cash and also paid some of the disbursements included in the taxed costs. He says he expended for disbursements $207, although the sums chargeable as disbursements in the taxed bill of costs aggregate at most only approximately half this amount. On the basis of his own figures, therefore, there would seem to be due from him a balance of approximately $350. On the other hand the version of the petitioners is entirely different. They contend that there is no record in the books of Mr. Benson of the payment of the $100 as claimed by Mr. Murchio. They contend that after the decision sustaining the validity of the mortgage, and accordingly after Mr. Benson's death, but before the sheriff's sale, Mr. Murchio agreed to pay in full for all fees, disbursements and costs a sum equal to twenty-five per cent. of the purchase price at the future sheriff's sale. They say an agreement to that effect was drawn up and presented to Mr. Murchio for signature, but he did not sign it, stating in substance that it was unnecessary since he could be trusted. As the property brought $3,100 at the sale, the twenty-five per cent. amounted to $775, which petitioners now claim.
Petitioners presented expert testimony to the effect that this amount would constitute a reasonable fee for the services rendered.
Mr. Murchio testified to the delivery to him by Mr. Benson of a receipt for $100 as being paid on account of Mr. Benson's fees. This receipt has not been produced. Mr. Murchio says he left it at Mr. Bernstein's office with an employe and since then all trace of it has been lost. Mr. Benson's death of course makes it impossible to obtain his version of the transaction with Mr. Murchio. The absence of any entry in Mr. Benson's books leads to the possibility that there was a $100 payment which was used for necessary disbursements in the foreclosure rather than to apply on fees, especially since the taxed bill of costs apparently does not contain the items for advertising the sale and sheriff's fees on the sale.
In view of the conflicting testimony, I have decided to fix compensation for Mr. Benson and his successor, for what I consider a reasonable amount, considering the nature of the litigation and the results obtained. *Page 9 
I therefore find that petitioners are entitled to the sum of $500 over and above any sums which may have been paid by Mr. Murchio. Petitioners will be given a lien against the premises for that amount, the sheriff's deed to the premises to be delivered upon payment thereof. An order to that effect will be advised.